1

2

3

4

5                         UNITED STATES DISTRICT COURT

6                         EASTERN DISTRICT OF WASHINGTON

7    LIANE CARLSON, an individual,

                                              NO:  13-CV-0320-TOR
8                              Plaintiff,

                                              ORDER RE: CROSS MOTIONS FOR
9          v.                                 SUMMARY JUDGMENT

10   CITY OF SPOKANE, municipal
     corporation in and for the State of
11   Washington; and HEATHER LOWE,
     an individual,
12
                               Defendant.
13

14         BEFORE THE COURT are the following motions: Defendant's Motion for

15   Summary Judgment (ECF No. 40), Plaintiff's Partial Motion for Summary

16   Judgment (ECF No. 58), Plaintiff's Motion to Exclude Defendants' Expert Judith

17   Clark (ECF No. 46), Defendants' Motion to Exclude Expert Testimony of Jennifer

18   Morphis (ECF No. 54), and Plaintiff's Motion to Strike the Declarations of Gita

19   George-Hatcher, Dan Daling, and David Chandler (ECF No. 78).  These matters

20   were heard with oral argument on October 17, 2014.  Alexandria T. John and

     ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 1

Robert A. Dunn appeared on behalf of Plaintiff.  Sean D. Jackson and Michael A. Patterson appeared on behalf of Defendants.  The Court has reviewed the briefing and the record and files herein and heard from counsel, and is fully informed.

### BACKGROUND

Plaintiff alleges claims of disability discrimination, wrongful discharge in violation of public policy, intentional and negligent infliction of emotional distress, and wrongful withholding of wages.  Defendants now move for summary judgment on all claims.  ECF No. 40.  Plaintiff has filed a cross-motion for partial summary judgment on (1) the disability element of her ADA claim; (2) the adverse employment action element of her ADA claim; and (3) her WLAD claim for disparate treatment.  ECF No. 58.  For the reasons discussed below, this Court grants and denies Defendants' motion in part, and grants and denies Plaintiff's motion in part.

### FACTS

Plaintiff Liane Carlson began working for Defendant City of Spokane ("Defendant City") in 2007 as a Human Resources Specialist, which position later was renamed Human Resources Analyst.  ECF Nos. 41 at 1; 59 at 1.  In her position, Plaintiff was responsible for human resources and labor relations work within several departments.  ECF No. 50 at 45, 47 (document under seal).  Plaintiff regularly received positive evaluations and performance reviews from her

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 2

superiors and coworkers and had no record of discipline.  ECF Nos. 41 at 2; 59 at 2-4.

On July 19, 2011, Plaintiff suffered a debilitating stroke, which required leave for rehabilitation to address right-side paralysis and speech issues.  ECF Nos. 41 at 2; 59 at 4.  Plaintiff was placed on FMLA leave, and when that leave was exhausted, resorted to leave hours from the City's shared leave bank and hours donated by other City employees.  ECF No. 41 at 3.

In January 2012, Plaintiff's doctor cleared Plaintiff to return to work for up to eight hours of teleworking per week, ECF No. 59 at 4, and by late February, Plaintiff was cleared to work two days per week at home and one half day in the office.  ECF Nos. 41 at 4; 59 at 5.  At this time, Plaintiff met with her supervisor, Human Resources Director Heather Lowe ("Defendant Lowe"), requesting accommodations in order to perform her job duties.  ECF Nos. 49-4 at 47; 59 at 5.  Initially, Plaintiff worked two and a half days a week, using intermittent leave share for the remaining portion of the week.[1]  ECF No. 59 at 5.  During this period following her return to work, neither Plaintiff nor Defendant Lowe received any

[1] Intermittent leave share allows employees who have exhausted their leave balances to apply for leave that has not been used by other employees.  ECF No. 45-2 at 52-53.  This program allows employees to maintain a full forty-hour workweek so as not to lose pay or benefits.  *Id.*

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 3

1    complaints about Plaintiff's job performance, nor did Defendant Lowe voice any

2    complaints about the sufficiency of Plaintiff's performance.[2]  ECF Nos. 49-4 at 34;

3    59 at 5.

4          At the end of February, Defendant Lowe was informed by payroll that the

5    standard City practice was to allow intermittent leave share only if a bargaining

_____

6    [2] Although the parties agree that Plaintiff did not receive any complaints about her

7    work, they do dispute Plaintiff's overall work performance.  Defendants contend

8    Plaintiff's work was "severely limited" to such activities as checking her email,

9    reviewing HR magazines, generating a Title VI report, and viewing HR-related

10   websites.  ECF No. 72 at 2.  As a result, Defendants contend Plaintiff's work

11   activities constituted far less than the work her position demanded.  *Id.*  On the

12   other hand, Plaintiff argues that Defendant Lowe was responsible for assigning

13   Plaintiff work and thus Defendant Lowe's failure or refusal to assign certain

14   projects to Plaintiff should not reflect on Plaintiff's ability to fully perform the

15   duties of her position.  ECF No. 83 at 4-5.  According to Plaintiff, "Defendants

16   never requested or scheduled Plaintiff Carlson to perform any job function during

17   the six-week time frame she worked after her stroke which Plaintiff refused or was

18   unable to do, or which Plaintiff otherwise requested not be assigned to her."  *Id.* at

19   5.

20

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 4

unit had specifically negotiated for that right.  ECF Nos. 41 at 4; 45-2 at 52-53.[3]

Accordingly, Defendant Lowe informed Plaintiff that she was not eligible for

intermittent leave share.  ECF Nos. 41 at 4; 59 at 5-6; 68-1 at 9-10.   Plaintiff

instead had the option of either taking full-time leave share or returning to work on

a modified schedule, the latter option resulting in reduced pay status and affected

benefits.  ECF Nos. 41 at 4; 59 at 5.  Plaintiff subsequently opted for full-time

leave share.[4]  ECF No. 51 at 6.  As a result, Defendants did not implement

Plaintiff's accommodation requests.  ECF No. 70 at 3.

    During a meeting in May 2012, Plaintiff provided Defendant Lowe a letter

from her physician, Dr. Mark Gordon, stating that Plaintiff could return to full-time

work but would require accommodations due to her disability.  ECF Nos. 59 at 6-7,

---

[3] The work agreement to which Plaintiff's benefits were tied did not actually

preclude intermittent leave share.  ECF Nos. 68-1 at 20; 70 at 2.  In fact, another

City employee, subject to the same type of employment as Plaintiff, used

intermittent leave share in October 2013.   ECF Nos. 68-1 at 12-13; 70 at 3.

Instead, the final determination whether to grant intermittent leave rested with the

HR department.  ECF Nos. 68-1 at 20; 70 at 2.

[4] Plaintiff appealed Defendant Lowe's decision regarding Plaintiff's leave options

to the City Administrator, who subsequently affirmed Defendant Lowe's decision.

ECF Nos. 41 at 5; 45-1 at 43.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 5

41 at 6.  Although Dr. Gordon did not recall speaking with anyone from the City regarding Plaintiff's job duties, Plaintiff provided Dr. Gordon with an HR job description—which Defendant Lowe provided to Plaintiff—in an effort to help Dr. Gordon understand Plaintiff's job duties and assess her ability to return to work. ECF Nos. 41 at 6-7; 59 at 6; *see* ECF No. 50 at 45, 47 (document under seal).  In light of this information, Dr. Gordon opined Plaintiff would be able to perform the essential job functions and physical requirements of her position provided she receive the following accommodations: flexible scheduling, longer and more frequent work breaks, work from home as needed, mobility products, one-handed keyboard and speech recognition software, recorder and writing aids, lightweight briefcase, long handled reacher, hand cart, handicap parking space. [5]  ECF Nos. 41 at 6; 52 at 33-34 (document under seal); 59 at 7.

Instead of implementing Dr. Gordon's proposed accommodations, Defendant Lowe—uncertain about Plaintiff's ability to return to work in light of

---

[5] In his deposition testimony, Dr. Gordon clarified that he released Plaintiff back to work not knowing definitively whether or not she would succeed but understanding the difficulty of assessing a patient's capabilities until she is returned to the position and given an opportunity to try.  ECF No. 52-1 at 78 (document under seal).

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 6

her speech limitations[6]—scheduled Plaintiff for a Fitness for Duty examination

with Dr. Paula Lantsberger of Occupational Medicine Associates.  ECF No. 41 at

7; 59 at 7.   After the examination, Dr. Lantsberger provided Defendant Lowe with

her progress notes, which indicated that based on the examination results and the

job description provided by Defendant Lowe,[7] Plaintiff could perform her work

duties.  ECF Nos. 49-4 at 52-53; 59 at 8.  Defendant Lowe subsequently contacted

_____

[6] During this time, Plaintiff was continuing ongoing treatment with speech

therapist Lisa Kettleson.  ECF No. 52-1 at 90 (document under seal).  In her

treatment notes, Ms. Kettleson recorded that Plaintiff was "continu[ing] to struggle

with verbal fluency for high level speaking situations" and having "difficulty

getting words out and pronouncing them clearly."  *Id.* at 88, 90-91, 96 (document

under seal).  Ms. Kettleson further noted that Plaintiff would be able to think of

which words to say but would have difficulty pronouncing them.  ECF No. 69-1 at

75 (document under seal).  At this time, Ms. Kettleson opined that, although

Plaintiff would need continued therapy in order "to return to work in 100% of the

way," Plaintiff could return to work in a limited capacity considering she "was

doing well" and "could communicate in a lot of scenarios."  *Id.* at 77 (document

under seal).

[7] This was the same job description Plaintiff previously provided Dr. Gordon.  ECF

No. 52-1 at 49-50.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 7

Dr. Lantsberger to clarify and expand upon Plaintiff's job duties, indicating that ninety percent of Plaintiff's job involved interactive verbal communication.  ECF Nos. 49-4 at 53-56; 50 at 55 (document under seal); 59 at 8.  Defendant Lowe also suggested, in light of her concern that Plaintiff would not be able to handle the responsibilities of her HR position, that Plaintiff be placed on medical layoff for sixty days with a subsequent reevaluation at the end of that period.  ECF Nos. 49-4 at 59; 52 at 62 (document under seal); 59 at 8-9.

On June 5, 2012, Dr. Lantsberger ultimately determined Plaintiff would be unable to perform the essential elements of her position, even with accommodation.  ECF Nos. 41 at 8; 52 at 36-37 (document under seal); 59 at 9.  Dr. Lantsberger recommended a sixty-day medical layoff with a reevaluation at the end of that period.  ECF Nos. 41 at 8; 59 at 9.  Accordingly, Defendant Lowe sent Plaintiff a letter placing her on medical layoff status effective June 22, 2012, with the request that Plaintiff return in sixty days for re-evaluation.  ECF Nos. 41 at 9; 59 at 9; 72 at 5.  Shortly thereafter, Plaintiff sought a second opinion from Dr. Castleman.  ECF Nos. 41 at 9; 59 at 9.  Dr. Castleman recommended that the City let Plaintiff attempt her job on a trial basis, stating no one could say with certainty whether Plaintiff would be able to perform her position unless she was given opportunity to try.  ECF Nos. 41 at 9-20; 52 at 40 (document under seal); 59 at 9, 72 at 5.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 8

1   Plaintiff did not return after sixty days for a medical evaluation, nor did she

2   return to work anytime thereafter.  ECF No. 59 at 9.  Instead, on June 21, 2012,

3   Plaintiff filed a complaint with the Human Rights Commission alleging violation

4   of her rights under state and federal law.  ECF No. 41 at 11.  Plaintiff subsequently

5   withdrew her complaint and initiated this suit on August 31, 2013.  ECF No. 1.

**DISCUSSION**

6

7   **I.   Cross-Motions for Summary Judgment**

8   Summary judgment may be granted to a moving party who demonstrates

9   "that there is no genuine dispute as to any material fact and that the movant is

10   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party

11   bears the initial burden of demonstrating the absence of any genuine issues of

12   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

13   shifts to the non-moving party to identify specific genuine issues of material fact

14   which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

15   242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the

16   plaintiff's position will be insufficient; there must be evidence on which the jury

17   could reasonably find for the plaintiff."  *Id.* at 252.

18   For purposes of summary judgment, a fact is "material" if it might affect the

19   outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any

20   such fact is "genuine" only where the evidence is such that a reasonable jury could

1  find in favor of the non-moving party.  *Id.*  In ruling upon a summary judgment

2  motion, a court must construe the facts, as well as all rational inferences therefrom,

3  in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372,

4  378 (2007).  Only evidence which would be admissible at trial may be considered.

5  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

6  **A. Failure to Accommodate (ADA & WLAD)**

7  Plaintiff alleges that Defendants violated the ADA and the WLAD by

8  failing to accommodate her disability.  Defendants have moved for summary

9  judgment on these claims on the grounds that Plaintiff is not an individual qualified

10  for reasonable accommodations because she could not perform the essential

11  elements of her job with or without accommodation.  ECF No. 40.  Plaintiff has

12  moved for partial summary judgment on the following issues: (1) Defendants knew

13  and perceived her as disabled prior to terminating her employment, and (2)

14  Plaintiff suffered an adverse employment action when Defendants placed her on

15  medical layoff status.  ECF No. 58.  Since the parties have not identified any

16  relevant distinctions between the ADA and the WLAD for purposes of the instant

17  cross-motions, the Court will address Plaintiff's state and federal claims together.

18  Both the ADA and the WLAD require an employer to make reasonable

19  accommodations for an employee with a disability.  42 U.S.C. § 12112(b)(5);

20  Wash. Rev. Code § 49.60.180(1)-(3).  To prevail on a failure to accommodate

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 10

claim under the ADA, a plaintiff must prove that "(1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quotation and citation omitted).  Failure to accommodate claims are not analyzed under the familiar *McDonnell Douglas* burden shifting framework because liability does not "turn on the employer's intent or actual motive." *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004).

The elements of a failure to accommodate claim under the WLAD are similar.  The plaintiff must prove that (1) she had a sensory, mental, or physical abnormality that substantially limited her ability to perform the job; (2) she was qualified to perform the essential functions of the position; (3) she gave her employer notice of the disability and its accompanying substantial limitations; and (4) upon receiving notice, the employer failed to affirmatively adopt measures that were both available and medically necessary to accommodate the disability. *Riehl v. Foodmaker, Inc.*, 152 Wash.2d 138, 145 (2004).  The WLAD and the federal ADA have the same purpose; thus, Washington courts look to federal cases for guidance. *MacSuga v. Cnty. of Spokane*, 97 Wash. App. 435, 442 (1999) (*citing Fahn v. Cowlitz Cnty.*, 93 Wash.2d 368, 376 (1980)).

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 11

As an initial matter, the parties do not dispute that Defendants knew Plaintiff was disabled within the meaning of the ADA and WLAD at all times relevant to this action and that Plaintiff suffered an adverse employment action when Defendant City placed her on medical layoff status.  ECF Nos. 71 at 3; 83 at 3.  Because there is no genuine dispute of material fact surrounding these issues, this Court finds it appropriate to **GRANT**, in part, Plaintiff's motion for summary judgment regarding these issues.

1. Defendant Lowe's Liability under the ADA

Defendants initially move to dismiss as a matter of law Plaintiff's ADA claims against Defendant Lowe.  ECF No. 40 at 3.  The ADA limits liability to an "employer" as defined under the Act.  42 U.S.C. § 12111.  As such, individual defendants cannot be held personally liable under the ADA.  *Walsh v. Nev. Dep't Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006); *cf. Brown v. Scott Paper Worldwide Co.*, 143 Wash.2d 349, 361 (2001) (holding that, under the WLAD, "individual supervisors, along with their employers, may be held liable for their discriminatory acts").  However, an employer can be held vicariously liable for the discriminatory acts of its employees.  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).  Accordingly, Plaintiff's ADA claims against Defendant Lowe are dismissed and this Court shall only consider Defendant City's liability under these claims.

2.  Essential Functions

Defendants move for summary judgment on Plaintiff's failure to accommodate claims against Defendant City on the grounds that Plaintiff was unable to engage in effective verbal communication, a purportedly essential function of the HR Analyst position. ECF No. 40 at 4. Plaintiff, on the other hand, maintains verbal communication is merely a physical requirement of her position and thus is not relevant to determining whether she is a qualified individual under the ADA. ECF No. 67 at 13-14. In the alternative, Plaintiff contends that questions of fact exist regarding her ability to verbally communicate with or without accommodation. *Id.* at 15-21.

The burden of establishing that a function is essential "lies uniquely with the employer." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (en banc) (quotation and citation omitted). To satisfy this burden, the employer must produce admissible evidence which, if credited by the trier of fact, would support a finding that the function at issue is essential. *Samper*, 675 F.3d at 1237. Relevant evidence includes, but is not limited to: the employer's judgment as to which functions are essential; written job descriptions prepared before advertising or interviewing applicants for the job; the amount of time spent on the job performing the function; the work experience of past incumbents in the job;

and the current work experience of incumbents in similar jobs.  29 C.F.R.

§ 1630.2(n)(3);  *Bates*, 511 F.3d 974 at 991.

However, "'essential functions' are not to be confused with 'qualification

standards,' which . . . are 'personal and professional attributes' that may include

'physical, medical [and] safety' requirements."  *Bates*, 511 F.3d 974 at 990 (citing

29 C.F.R. § 1630.2(n)(1)).  As the Ninth Circuit noted, the difference is "crucial"

because an employee need not meet all of the employer's "qualification standards"

to show that she is qualified for purposes of the ADA.  *Id.* (noting "it would make

little sense to require an ADA plaintiff to show that [s]he meets a qualification

standard that [s]he undisputedly *cannot* meet because of [her] disability and that

forms the very basis of [her] discrimination challenge").

The parties have extensively briefed the issue of whether effective verbal

communication is an essential function of the HR Analyst position.  Defendants

have produced the following evidence that effective verbal communication is an

essential element of the position.  First, Defendants point to the HR Analyst job

description, which includes the following "essential job functions": ability to assist

in negotiations, participate in pre-disciplinary hearings, advise managers and

supervisors on human resources and labor matters, assist in the planning and

developing of human resources policies, conduct investigations and hold meetings

as necessary to resolve human resources matters, conduct or coordinate human

resources-related training classes, and assist in the preparation and presentation of human resources related matters.  ECF No. 50 45, 47 (under seal).  According to Defendants, these tasks necessitate interactive speaking with others.  ECF No. 40 at 11.

Second, Defendants point to Plaintiff's personal testimony about her position.  In her deposition testimony, Plaintiff admitted that the ability to communicate effectively was necessary to carry out most of the "essential job functions" listed on her position's job description.  ECF No. 91-1 at 3-20 (admitting that she used some degree of verbal communication when facilitating and participating in predisciplinary hearings, which involved speaking to people; advising managers and supervisors, which involved conveying complex ideas in a relatively easy-to-understand way; developing human resources policies, which involved talking and working in a group; conducting investigations, which involved interviewing witnesses; and conducting training classes, which involved presenting to a room full of people).

Finally, Defendants point to the experience of other current HR Analysts at the City, Gita George-Hatcher and Dan Daling; the current Director of Human Resources, Defendant Lowe; and the former director of Human Resources, David

1    Chandler.[8]  These witnesses all agree that effective verbal communication

2    constitutes a substantial portion of the work performed by HR Analysts, ranging

3    from fifty to ninety percent.  *See* ECF Nos. 42; 43; 44.  Specifically, all three

4    witnesses stated that the position involves a large amount of communication face

5    to face, by phone, and by email.  ECF Nos. 42 at 2; 43 at 2, 44 at 2.

6         In response, Plaintiff sets forth the following challenge to Defendants'

7    assertion that effective verbal communication is an essential function of the HR

8    Analyst position.  Plaintiff attempts to distinguish effective verbal communication

9    as a *method* of performing an essential function of her position rather than an

10   essential function in itself.  ECF No. 67 at 12-13.  As Plaintiff notes, the job

11   description does not specifically identify "verbal communication" as an essential

12   function.  *Id.* at 13.  Rather, Plaintiff contends verbal communication is merely a

13   "physical requirement" of the position.  *Id.*  Under the "Physical Requirements"

14   section of the job description, an HR Analyst is required "to speak well enough to

15   converse on the telephone and communicate effectively with individuals and

16   groups."  ECF No. 50 at 1,3 (document under seal).  As such, Plaintiff argues that

17   effective verbal communication is more appropriately characterized as a

18   [8] Plaintiff challenges the admissibility of the declarations of Ms. George-Hatcher,

19   Mr. Daling, and Mr. Chandler.  ECF No. 78.  The Court addresses this challenge in

20   a subsequent section of this Order.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 16

qualification standard than an essential function of the position and thus is not necessary to determine whether she is a qualified individual under the ADA. *See Bates*, 511 F.3d 974 at 990.

The Court finds a genuine issue of material fact exists regarding whether effective verbal communication is an essential function of the HR Analyst position. Although Defendants have undoubtedly established that some degree of communication is necessary to carry out the essential functions of the HR Analyst position, this Court is not convinced verbal communication is the only means by which employees can effectively communicate. Rather, as Plaintiff contends, verbal communication might merely be considered a method by which the other essential functions explicitly listed in the job description are performed. On the other hand, if the ability to effectively speak is necessary to carry out the essential functions of the HR Analyst position, then a jury may find that oral communication is an implicit part of those same essential functions and thus an essential function in itself. Accordingly, because a reasonable jury could find that effective verbal communication is not an essential function of the HR Analyst position, this Court declines to grant Defendants' motion for summary judgment on this issue.

//

//

//

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 17

3. <u>Ability to Perform Essential Functions with or Without Reasonable Accommodation</u>

Assuming the jury does find that effective verbal communication is an essential function of the HR Analyst position, the burden then falls to Plaintiff to demonstrate that she was able to perform this function with or without reasonable accommodations. *Samper*, 675 F.3d at 1237.  Defendants contend that, given Plaintiff's medically-determined speech limitations, there were no reasonable accommodations that could have allowed her to perform the essential functions of her position.  ECF No. 40 at 12.  Plaintiff, on the other hand, argues that questions of fact remain regarding her ability to perform with or without accommodation.  ECF No. 67 at 14-15.  Further, Plaintiff challenges whether Defendants properly engaged in the interactive process.  *Id.* at 15

Under the ADA, once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations.  29 C.F.R. § 1630.2(o)(3); *Barnett v. U.S. Air.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *vacated on other grounds by* 535 U.S. 391 (2002).  Employers who fail to engage in this process face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible.  *Barnett*, 228 F.3d at 1116 (noting that summary judgment is

inappropriate if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process).  Pursuant to the interactive process, an employer is required "to 'gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are necessary to enable the applicant to perform the job." *Wong v. Regents Univ. Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) (quoting *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993)).  The duty to accommodate "is a 'continuing' duty that is 'not exhausted by one effort.'" *McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 2001).  The Ninth Circuit has explained the employer's duty regarding the interactive process as follows:

> [T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work, and by avoiding the creation of a perverse incentive for employees to request the most drastic and burdensome accommodation possible out of fear that a lesser accommodation might be ineffective.

*Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001); *see also* EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (Oct. 17, 2002), *available at* http://www.eeoc.gov/policy/docs/accommodation.html#intro ("If a reasonable

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 19

1    accommodation turns out to be ineffective and the employee with a disability

2    remains unable to perform an essential function, the employer must consider

3    whether there would be an alternative reasonable accommodation that would not

4    pose an undue hardship.").  What constitutes a reasonable accommodation turns on

5    the facts and circumstances of each case.  *Wong*, 192 F.3d at 819.  Reasonable

6    accommodations can include "[m]odifications or adjustments to the work

7    environment, or to the manner or circumstances under which the position held or

8    desired is customarily performed, that enable an individual with a disability who is

9    qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2.

10        Here, although the evidence demonstrates Plaintiff's verbal communication

11    was limited, factual issues remain as to whether Defendants engaged in the

12    interactive process, whether reasonable accommodations existed for Plaintiff's

13    limitations, and whether Plaintiff could perform the essential functions of her

14    position with or without reasonable accommodation.  When viewed in the light

15    most favorable to Plaintiff, the evidence shows Defendants may not have

16    sufficiently engaged in the interactive process, suggesting that the parties could

17    have discovered adequate accommodations to compensate for Plaintiff's

18    limitations.  Further, the evidence demonstrates Plaintiff was not offered

19    opportunity to perform her position with or without accommodation, thus leaving

20    uncertain whether she is a qualified individual for purposes of the ADA.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 20

1      First, there is a genuine issue whether Defendants engaged in the interactive

2  process.  As an initial matter, the parties do not dispute that Plaintiff provided

3  Defendants notice of her disability and need for accommodation.  ECF Nos. 59 at

4  5; 72 at 2.  Defendants contend that they engaged in a "very lengthy interactive

5  process" after being put on notice of Plaintiff's limitations.  ECF No. 87 at 9.

6  However, Defendants' lengthy list of processes primarily includes the variations of

7  leave afforded Plaintiff.  Notably absent, save for Defendants affording Plaintiff an

8  "opportunity to suggest reasonable accommodations," ECF No. 87 at 9, was a

9  cooperative meeting between Defendants and Plaintiff that involved discovering

10  types of accommodation that would help Plaintiff perform her job.  In her

11  deposition testimony, Defendant Lowe confirmed that she only had two brief

12  meetings, each lasting no longer than ten minutes, with Plaintiff between February

13  and May 2012.  ECF No. 68-1 at 26-27.  After the first meeting, Plaintiff went on

14  fulltime leave share and thus Defendants did not implement Plaintiff's

15  accommodation requests.  In the second meeting, which lasted merely five

16  minutes, Plaintiff provided Defendant Lowe with Dr. Gordon's letter and proposed

17  accommodations; however, no conversation or discussion about reasonable

18  accommodations ensued either between Defendant Lowe and Dr. Gordon or

19  between Defendant Lowe and Plaintiff.  Instead, Defendant Lowe scheduled

20  Plaintiff's Fitness for Duty examination, allegedly in the effort to facilitate the

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 21

1  reasonable accommodation process, and subsequently determined medical layoff

2  with an opportunity to reevaluate was the appropriate course of action.

3  Undoubtedly, this is not the "cooperative problem-solving" framework

4  contemplated by the ADA and Ninth Circuit.  *See Humphrey*, 239 F.3d at 1138.

5  Because a reasonable jury could find that Defendants did not adequately engage in

6  the interactive process, this Court declines to grant summary judgment on this

7  issue.

8       Second, there is a genuine issue regarding the extent of Plaintiff's limitations

9  and whether Plaintiff was capable of performing the duties of her job without

10  reasonable accommodation.  The parties seem to dispute the characterization of the

11  various medical opinions concerning the extent of Plaintiff's speech limitations.

12       Regarding Dr. Lanstberger's opinion, Defendants contend the opinion of a

13  board certified occupational medicine specialist—who ultimately opined Plaintiff

14  would be unable to perform essential functions of her position—should be

15  dispositive.  On the other hand, Plaintiff notes Dr. Lantsberger merely indicated

16  Plaintiff presented "with occasional word finding difficulty and articulation . . .

17  difficulty" and her speech was "mildly to moderately dysarthiric," creating doubt

18  as to whether she was truly unable to adequately perform her job.  ECF No. 67 at

19  15.  Further, Plaintiff challenges Dr. Lantsberger's ultimate opinion as lacking

20  credibility.  *Id.* at 19-20.  Although Dr. Lanstberger ultimately opined Plaintiff was

1   unable to perform her essential work functions, with or without accommodation,

2   her original findings—based on the job description that purportedly establishes

3   verbal communication as an essential function of Plaintiff's position—opined that

4   Plaintiff would be able to return to work.  It was only after Defendant Lowe

5   contacted Dr. Lantsberger, "clarifying" that ninety percent of the HR Analyst's

6   position involves interactive verbal communication and suggesting a medical

7   layoff, ECF No. 50 at 55, that Dr. Lantsberger determined Plaintiff would be

8   incapable of performing the essential functions required of her position.

9       Regarding Ms. Kettleson's opinion, Defendant highlights Ms. Kettleson's

10  deposition testimony in which she stated Plaintiff was having difficulty throughout

11  her treatment with "higher level language tasks" and verbal fluency.  ECF No. 40

12  at 115.  Plaintiff, on the other hand, interpreted Ms. Kettleson's assessment as

13  merely indicating that Plaintiff was not completely capable of her past speech

14  abilities but could communicate in a lot of scenarios and would require more

15  therapy "to return to work in 100% of the way she was before."  ECF No. 67 at 15.

16  Defendants do not suggest that Plaintiff's position mandated perfect

17  communication skills; thus, a genuine issue remains as to the extent of Plaintiff's

18  limitations and whether her communication skills were sufficient to perform her

19  job.  Accordingly, because a reasonable jury could find that Plaintiff could perform

20

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 23

1   her job without accommodation, the Court declines to grant summary judgment on

2   this issue.

3          Third, even assuming Plaintiff was unable to perform the essential functions

4   of her job without accommodation, there is a genuine issue regarding whether a

5   reasonable accommodation existed which would enable Plaintiff to perform her

6   essential job functions *with* accommodation.  Defendants contend, given Plaintiff's

7   limitations, no reasonable accommodation could have been identified that would

8   have allowed Plaintiff to perform her essential job functions.  ECF No. 87 at 9-10.

9   However, as discussed above, this Court questions whether Defendants adequately

10  engaged in the interactive process and explored possible accommodations.  For

11  instance, Plaintiff's briefing suggests numerous accommodations for her speech

12  limitations, such as access to TTY telephone or similar devices, as well as the use

13  of other methods of communication to supplement verbal communication, such as

14  emailing and instant messaging.  ECF No. 67 at 18-19.  Further, both Drs. Gordon

15  and Castleman stated that Plaintiff should be afforded the opportunity to return to

16  work, noting that no one could know with certainty whether Plaintiff was capable

17  of fulfilling her work responsibilities without allowing her the opportunity to try.

18  ECF No. 52 at 40, 78.  Defendant Lowe did not permit Plaintiff opportunity to

19  attempt to perform her job with any of the accommodations originally requested or

20  subsequently recommended by Dr. Gordon, believing Plaintiff would not be able to

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 24

perform the essential functions of the position even with these accommodations. ECF No. 49 at 65-67.  In line with the Ninth Circuit's reasoning in *Humphrey*, Plaintiff arguably should have been afforded opportunity to return to work to ascertain the effectiveness of the proposed accommodations.  *Humphrey*, 239 F.3d at 1138.  If these accommodations proved ineffective, the parties would then need to explore the effectiveness of alternative accommodations.  Because Plaintiff was not afforded this opportunity, a genuine issue remains whether she was capable and thus a qualified individual under the ADA.

In conclusion, genuine issues remains as to whether (1) effective verbal communication is an essential function of the HR Analyst position; (2) Defendants adequately engaged in the interactive process; (3) Plaintiff's limitations prevented her from performing the essential functions of her position without accommodation; and (4) assuming Plaintiff was incapable of performing the essential functions without accommodation, reasonable accommodation existed that would allow Plaintiff to perform the essential functions of the HR Analyst position.  Accordingly, Defendants motion for summary judgment on Plaintiff's failure to accommodate claims under the ADA and WLAD (ECF No. 40) is **DENIED**.

//

//

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 25

**B. Fitness for Duty Examination Under the ADA**

Plaintiff contends the Fitness for Duty examination, scheduled by Defendant Lowe, gives rise to a separate cause of action under the ADA because this examination was not shown to be job-related and consistent with business necessity.  ECF No. 67 at 25.  Plaintiff relies on the following two grounds: (1) there was no business necessity in ordering Plaintiff to submit to an additional examination considering Plaintiff already provided Defendants with documentation from her treating physician, Dr. Gordon; and (2) the examination, purportedly meant to test Plaintiff's communication limitations, involved no specific testing of these limitations.  *Id.* at 26.  Defendants counter that this examination was job-related and consistent with business necessity because it addressed whether Plaintiff was able to adequately perform her job given her speech limitations at that time.  ECF Nos. 40 at 9; 87 at 10.

Under 42 U.S.C. § 12112(d)(4)(A), an employer may require a medical examination to determine whether an employee is disabled if such examination "is shown to be job-related and consistent with business necessity." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1145 (9th Cir. 2010) (quoting 42 U.S.C. § 12112(d)(4)(A)).  Although the business necessity standard is "quite high," the standard "may be met even before an employee's work performance declines if the employer is faced with significant evidence that could cause a reasonable person to

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 26

1    inquire as to whether an employee is still capable of performing his job." *Id.* at

2    1146. "The employer bears the burden of demonstrating business necessity." *Id.*

3    EEOC regulations allow an employer to "require a medical examination (and/or

4    inquiry) of an employee that is job-related and consistent with business necessity."

5    29 C.F.R. § 1630.14(c). As a result, supervisors may then be informed by the

6    medical examination "regarding necessary restrictions on the work or duties of the

7    employee and necessary accommodations." *Id.* § 1630.14(c)(1)(i).

8            Here, even considering the high standard needed to demonstrate business

9    necessity, there is no genuine issue of material fact regarding whether Defendants'

10   use of a Fitness for Duty examination was appropriate. Although Dr. Gordon

11   opined that Plaintiff was capable of returning to work provided she be afforded

12   certain accommodations, Defendant Lowe believed the recommended

13   accommodations were insufficient to account for Plaintiff's speech limitations.

14   As of the date Defendant Lowe scheduled the examination, Dr. Gordon's

15   evaluation was the only medical assessment. Pursuant to the City's policy and

16   practice, Defendant Lowe thought it prudent to have Dr. Lantsberger, of

17   Occupational Medical Associates, exam Plaintiff for a second opinion in order to

18

19

20

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 27

1  assess Plaintiff's ability to return to work[9]  and presumably identify possible

2  accommodations.  ECF Nos. 40 at 9; 45-1 at 51; 87 at 10.  Under EEOC's

3  regulations, employers are allowed to require medical examinations, such as

4  Fitness for Duty examinations, in an effort to comply with the interactive process

5  and discover "necessary accommodations."  29 C.F.R. § 1630.14(c)(1)(i).

6  Considering Defendants' duties under the ADA and the fact that Plaintiff already

7  informed Defendants of her disability, this examination was undoubtedly job-

8  related and a business necessity.   This Court finds that Defendants have satisfied

9  their burden that the Fitness for Duty Examination was job-related and consistent

10  with business necessity.  Accordingly, Defendants' summary judgment on this

11  claim (ECF No. 40) is **GRANTED**.

12      **C. Disparate Treatment Under the ADA & WLAD**

13          In addition to her failure to accommodate claims, Plaintiff has asserted

14  claims under the ADA and the WLAD for disparate treatment on the basis of a

15  disability.  Defendants have moved for summary judgment on these claims on the

16  grounds that Plaintiff has not identified a similarly situated employee who was

17  treated more favorably, and the City had a legitimate, non-discriminatory reason

18  [9] Contrary to Plaintiff's assertion, Dr. Lantsberger's examination did generally

19  assess Plaintiff's speech, even if there was no "specific" test employed.  *See* ECF

20  No. 52 at 45-59 (document under seal).

for placing Plaintiff on medical layoff: Plaintiff could not perform the essential functions of her position.[10]  ECF No. 40 at 18.  Plaintiff has moved for summary judgment on her WLAD claim on the grounds that she has satisfied the prima face elements.  ECF No. 58 at 23-26.

To prove a claim for disparate treatment under the ADA, a plaintiff may present direct evidence demonstrating that the employer's adverse employment decision was "because of" the employee's disability.  *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004); *Daniel v. Boeing Co.*, 764 F.Supp. 2d 1233, 1240 (W.D. Wash. 2011) ("Plaintiff may establish a violation of the ADA by providing direct evidence of discrimination or by making a *prima facie* showing of discriminatory intent.").  Alternatively, a plaintiff may assert her ADA claim by providing indirect evidence of discrimination under the familiar *McDonnell Douglas* burden-shifting framework.  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n. 3 (2003); *Chuang v. Univ. Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Domingo v. Boeing Employee's Credit Union,* 124 Wash. App. 71, 77 (2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under *McDonnell Douglas*, a plaintiff alleging disparate treatment must first establish a prima facie case of discrimination.  Specifically, a plaintiff must show

---

[10] As discussed above, this Court dismisses Plaintiff's ADA claim for disparate treatment as against Defendant Lowe, an individual.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 29

that he or she (1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably.[11]  *Chuang*, 225 F.3d at 1123; *Riehl v. Foodmaker, Inc.*, 152 Wash.2d 138, 150 (2004) (en banc).  The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for taking the challenged action.  *Chuang*, 225 F.3d at 1123.  Provided that the employer can articulate such a reason, the burden then shifts back to the plaintiff to demonstrate that the proffered reason was a mere pretext for unlawful discrimination.  *Id.* at 1123-24.  "As a general matter, the plaintiff in an

---

[11] Another line of Washington case law lists the following as the elements for a prima facie case for disability discrimination: employee was (1) disabled, (2) subject to an adverse employment action; (3) doing satisfactory work; and (4) discharged under circumstances that raise a reasonable inference of unlawful discrimination.  *Brownfield v. City of Yakima*, 178 Wash. App. 850, at 873 (2014); *Callahan v. Walla Walla Hous. Auth.*, 126 Wash. App. 812, 819-20 (2005).  Plaintiff moves for summary judgment under this framework.  However, based on the most recent Washington Supreme Court opinion discussing the WLAD, the prima facie case announced in *McDonnell Douglas* appears to be the prevailing framework.  *See Scrivener v. Clark College*, 2014 WL 4648179, at * 3 (Wash. Sept. 18, 2014) (en banc).

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 30

employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Id.* at 1124.

Viewing the facts in the light most favorable to Plaintiff, this Court finds there is a genuine issue of material fact regarding whether Plaintiff suffered disparate treatment. First, Plaintiff presents persuasive direct evidence demonstrating that Defendants' decision to place her on medical layoff was "because of" her disability. Defendant Lowe's communications with Dr. Lantsberger, in which she expressed discomfort with allowing someone with Plaintiff's limitations to return to work and suggested medical layoff as an appropriate course of action, provide some evidence that Defendants' adverse employment decision was "because of" Plaintiff's speech-related disabilities. Most significantly, in her response to Dr. Lantsberger's assessment that Plaintiff was fit to return to work based on her Fitness for Duty examination, Defendant Lowe stated the following:

> I also thought about your suggestion that we put [Plaintiff] back to work and see what happens. If the workload cannot be handled, takes too long to complete, or complaints are received, then we would send her back to OMA for further evaluation. I am very uncomfortable about this scenario in putting her in a situation like this, as well as my employees.

ECF Nos. 49-4 at 59; 52 at 62 (document under seal); 59 at 8-9. A jury could reasonably conclude that this constitutes direct evidence that Defendants placed

1   Plaintiff on medical layoff "because of" her disability.

2           Second, Plaintiff has presented indirect evidence of disparate treatment.

3   Defendants do not dispute that Plaintiff is a disabled person within the meaning of

4   the ADA and that she suffered an adverse employment action when they placed her

5   on medical layoff status.  Thus, two of the four elements of a prima facie case for

6   disparate treatment are conceded.  As to whether Plaintiff was "qualified" for the

7   position, based on this Court' s previous discussion of Plaintiff's failure to

8   accommodate claims, genuine issues remain whether Plaintiff was qualified to

9   perform the essential functions of her job with or without accommodation.  Finally,

10  Plaintiff has presented some evidence indicating that other similarly-situated City

11  employees were treated more favorably.  Regarding use of intermittent leave share,

12  the HR department allowed at least one other employee (who was subject to the

13  same type of employment as Plaintiff) use of intermittent leave share.  ECF Nos.

14  68-1 at 12-13; 70 at 3.  Considering that Plaintiff's contract did not actually

15  preclude intermittent leave share and the final determination whether to grant

16  intermittent leave share rested with the HR department, ECF Nos. 68-1 at 20; 70 at

17  2, a reasonable jury could conclude that other similarly-situated employees were

18  treated more favorably than Plaintiff.  Therefore, Plaintiff has established a prima

19  facie case and the burden shifts to Defendants to provide a legitimate, non-

20  discriminatory explanation for their decision to place Plaintiff on medical layoff.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 32

There is a genuine issue of material fact as to whether Defendants demonstrated a legitimate, nondiscriminatory reason for Plaintiff's termination. The reason given by Defendants must actually constitute a valid nondiscriminatory explanation; that is, "one that 'disclaims any reliance on the employee's disability in having taken the employment action.'" *Dark v. Curry Cnty.*, 451 F.3d 1078, 1084 (9th Cir. 2006) (explaining that with few exceptions, "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination") (internal citation omitted). Defendants maintain that because Plaintiff could not perform her essential job duties, there was nothing unlawful or inappropriate about placing her on medical layoff status. However, Defendants cannot rationally state this explanation "disclaims any reliance on [Plaintiff's] disability." *Id.* at 1084.

Even if Defendants have put forth a legitimate non-discriminatory reason, Plaintiff has raised sufficient factual issues regarding whether Defendant City's explanation is merely pretext for unlawful discrimination. Most significantly, Defendant Lowe's communications with Dr. Lantsberger, in which she expressed discomfort with allowing someone with Plaintiff's limitations to attempt to handle the workload, provide some evidence that the termination decision was discriminatorily based. Further, there are still factual issues regarding Plaintiff's work performance following her stroke. Although Defendants note that Plaintiff's

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 33

1  performance was severely limited, Plaintiff contends that any limitations in her

2  work were because of Defendant Lowe's failure or refusal to assign her greater

3  work assignments.  ECF No. 83 at 4-5.  Therefore, a reasonable jury could find that

4  Plaintiff suffered disparate treatment because of her disability.  Accordingly,

5  Defendants' and Plaintiff's motions for summary judgment (ECF Nos. 40, 58)

6  regarding these claims are **DENIED**.

7  **D. Washington State Law Claims**

8        1. <u>Wrongful Discharge in Violation of Public Policy</u>

9        Defendants move for summary judgment on Plaintiff's wrongful discharge

10  claim on the grounds that no discrimination occurred, and even if the Court does

11  find discrimination, Plaintiff fails to satisfy the prima facie elements of the tort.

12  ECF No. 40 at 22-23.  Plaintiff counters that a genuine issue remains as to whether

13  Defendants failed to respond appropriately to Plaintiff's request for disability

14  accommodation.  ECF No. 67 at 27-28.

15        To state a claim for wrongful termination in violation of public policy, a

16  plaintiff must show the following: "(1) the existence of a clear public policy (the

17  *clarity* element); (2) that discouraging the conduct in which [he or she] engaged

18  would jeopardize the public policy (the *jeopardy* element); (3) that the public-

19  policy-linked conduct caused the dismissal (the *causation* element); and finally (4)

20  that the defendant has not offered an overriding justification for the dismissal (the

1   *absence of justification* element).” *Cudney v. ALSCO, Inc.*, 172 Wash.2d 524, 529

2   (2011) (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wash.2d 931, 941(1996))

3   (internal quotation marks omitted).  When analyzing a claim for wrongful

4   discharge, courts are instructed that the tort, a limited exception to Washington’s

5   general rule of at-will employment, is “narrow and should be applied cautiously.”

6   *Id.* at 530 (citation omitted).

7           Plaintiff relies on the WLAD as the basis for her wrongful discharge claim.

8   Although WLAD establishes a clear mandate of public policy, *see e.g.*, *Roberts v.*

9   *Dudley*, 140 Wash.2d. 58, 63 (2000), Plaintiff has not satisfied the jeopardy

10  element of the claim.  The WLAD provides for a cause of action itself—it does not

11  support a second cause of action for wrongful discharge as there is no additional

12  “jeopardy” not already protected by the statute.  Although the Washington

13  Supreme Court recently held in *Piel v. City of Fed. Way*, 177 Wash.2d 604, 614

14  (2013), that that the jeopardy analysis of a wrongful discharge claim—when the

15  claim is alleged alongside an otherwise comprehensive statutory scheme—should

16  not necessarily foreclose relief under the common law tort, *Piel* merely requires

17  courts to evaluate a wrongful discharge claim “in light of its particular context” to

18  determine whether the available statutory remedy is inadequate.  *Piel*, 177

19  Wash.2d at 617.  For instance, in *Bennett v. Hardy*, 113 Wash.2d 912, 924 (1990)

20  (en banc), the court allowed plaintiff’s wrongful discharge claim, based on the

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 35

1  public policy found in WLAD, to proceed despite this statutory basis because the

2  underlying scheme did not provide Plaintiff an adequate remedy.  Because Plaintiff

3  has not demonstrated, in this particular context, that WLAD is "inadequate to

4  protect public policy," *see Cudney* , 172 Wash.2d at 530-31, Defendants' motion

5  for summary judgment on this claim is **GRANTED**.

6       2.  Emotional Distress

7       Defendants move for summary judgment on Plaintiff's intentional and

8  negligent infliction of emotional distress claims.  ECF No. 40 at 23-24.  Regarding

9  Plaintiff's intentional infliction of emotional distress claim, Defendants move for

10  summary judgment on the ground that none of the conduct alleged appears to rise

11  to the extreme degree of conduct required for an outrage claim.  *Id.*  Plaintiff does

12  not respond to this challenge.  *See* ECF No. 67.  Regarding Plaintiff's negligent

13  infliction of emotional distress claim, Defendants move for summary judgment on

14  the ground that Plaintiff's allegations fail to establish negligent conduct.  ECF No.

15  40 at 24.

16       i.  *Intentional Infliction of Emotional Distress*

17       To establish the tort of outrage, a plaintiff must show "(1) extreme and

18  outrageous conduct, (2) intentional or reckless infliction of emotional distress, and

19  (3) severe emotional distress on the part of the plaintiff."  *Reid v. Pierce Cnty.*, 136

20  Wash.2d 195, 202 (1998).  It is not enough that that the defendant acted with

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 36

tortious or criminal intent, nor will liability extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Grimsby v. Samson*, 85 Wash.2d 52, 59 (1975).  Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.  The question of whether defendant's conduct was sufficiently outrageous is normally left to the jury.  *Dicomes v. State*, 113 Wash.2d 612, 630 (1989).  However, "it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently outrageous to result in liability." *Id*.  Factors the court may consider in determining whether the conduct is sufficiently outrageous include: the position occupied by defendant; whether the plaintiff was particularly susceptible to emotional distress and if defendant knew that fact; the degree of the severity of the emotional distress as opposed to annoyance, inconvenience or embarrassment; and "the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it." *Phillips v. Hardwick*, 29 Wash. App. 382, 388 (1981).

Here, Plaintiff bases her tort of outrage on the allegations in her Complaint, essentially the factual allegations that support her wrongful termination and discrimination claims.  Even under the high bar set by the Washington Supreme

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 37

1    Court, Plaintiff has not made sufficient allegations supporting a tort of outrage for

2    her termination.  Assuming all Plaintiff's factual allegations are true, the Court

3    does not find conduct "utterly intolerable in a civilized community." *Grimsby*, 85

4    Wash.2d at 59.  Accordingly, Defendants motion for summary judgment on this

5    claim is **GRANTED**.

6                        ii.    *Negligent Infliction of Emotional Distress*

7            To establish the tort of negligent infliction of emotional distress, a plaintiff

8    must show that (1) the defendant engaged in negligent conduct; (2) the plaintiff

9    suffered serious emotional distress; and (3) the defendant's negligent conduct was

10   the cause of the plaintiff's serious emotional distress.  *See Hegel v. McMahon*, 136

11   Wash.2d 122, 135 (1988).  "As with any claim sounding in negligence, where a

12   plaintiff brings suit based on negligent infliction of emotional distress 'we test the

13   plaintiff's negligence claim against the established concepts of duty, breach,

14   proximate cause, and damage or injury." *Snyder v. Med. Serv. Corp. of E. Wash.*,

15   145 Wash.2d 233, 243 (2001).  In addition to the traditional elements of

16   negligence, a plaintiff must show an "objective symptomology" that is susceptible

17   to a medical diagnosis.  *Kloepfel v. Bokor*, 149 Wash.2d 192, 196-97 (2003) (en

18   banc).

19           The Washington courts have repeatedly noted the limited place negligent

20   infliction of emotional distress claims have in the employment context.  As the

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 38

Washington Supreme Court aptly stated, "[t]here is no duty for an employer to provide employees with a stress free workplace." *Snyder*, 145 Wash.2d at 243. "[A]bsent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes." *Id.* at 244 (citing *Bishop v. State*, 77 Wash. App. 228, 244 n.5 (1995)); *see also Lords v. N. Auto. Corp.*, 75 Wash. App. 589, 595 (1994) (absent a "clear mandate of public policy," an employee has no cause of action against his or her employer for negligent infliction of emotional distress when employment at will is terminated); *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wash. App. 212 (1996) (holding employers have no duty to avoid infliction of emotional distress on employees when responding to employment issues). Rather, an employer owes a duty only to those who are foreseeably endangered by its conduct and only as to those risks or hazards whose likelihood made the conduct unreasonably dangerous. *Id.* at 245 ("Conduct is unreasonably dangerous when its risks outweigh its utility.").

Here, Plaintiff fails to establish that Defendants owed her a duty and subsequently breached that duty. Plaintiff bases her claim of negligent infliction of emotional distress on the allegations in her Complaint, essentially the factual allegations that support her wrongful termination and discrimination claims. Specifically, Plaintiff asserts that because Defendants terminated Plaintiff despite

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 39

1   her requests for accommodation and medical recommendations advising that she

2   could perform her job functions, she suffered emotional distress, susceptible to

3   medical diagnosis.  ECF No. 67 at 29 (citing to the expert report of Dr. Duane

4   Green, who opined that Plaintiff would have experienced an increase in depression

5   and anxiety symptoms as a result of her medical layoff if the work-related events

6   occurred exactly as she described).  Plaintiff offers no evidence to show a genuine

7   issue of material fact that there was a duty owed and a subsequent breach.  Rather,

8   Plaintiff merely accuses Defendants of inflicting emotional harm when they

9   terminated her.  Such allegations in the employment context do not support a cause

10  of action for this tort.  Accordingly, Defendants' motion for summary judgment on

11  this claim (ECF No. 40) is **GRANTED**.

12          3.  Unpaid Wages Claim

13          Defendants move for summary judgment on Plaintiff's unpaid wage and

14  hour claim on the grounds that the cause of action is not ripe.  ECF No. 40 at 25.

15  Under RCW § 49.52.050(2) an employer is guilty of a misdemeanor if it "willfully

16  and with intent to deprive the employee of any part of his or her wages, shall pay

17  any employee a lower wage than the wage such employer is obligated to pay such

18  employee by statute, ordinance, or contract."  Wash. Rev. Code § 49.52.050(2).

19  This statute is to be construed liberally to advance the intent of the Legislature to

20

protect employee wages and assure payment.  *Schilling v. Radio Holdings, Inc.*, 136 Wash.2d 152, 159 (1998).

The critical determination in these cases is whether non-payment is "willful," in other words, when it is the "result of knowing and intentional action by the employer, rather than a bona fide dispute as to the obligation of payment." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1050 (9th Cir. 1995); *see also Schilling*, 136 Wash.2d at 161 (to qualify as a "bona fide" dispute it must be "fairly debatable" as to whether an employment relationship exists or whether the wages must be paid).  Washington courts have found that an employer does not willfully withhold wages under the meaning of this statute where he has a "bona fide belief that he is not obligated to pay them."  *See e.g.*, *McAnulty v. Snohomish School Dist. No. 201*, 9 Wash. App. 834, 838 (1973) (finding no evidence in the record that employer did not genuinely believe that employee was legitimately discharged and that wages could be properly discontinued).

Generally, the issue of whether the withholding of wages was "willful" is a question of fact, however, if reasonable minds could reach but one conclusion from those facts, the issue may be decided as a matter of law.  *Moore v. Blue Frog Mobile, Inc.*, 153 Wash. App. 1, 8 (2009).  Plaintiff identifies no specific facts showing a genuine issue of material fact exists as to whether Defendants knowingly and intentionally withheld wages.  On the contrary, the record before

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 41

1   the Court indicates that Defendants had a genuine belief that they were not

2   obligated to pay Plaintiff after her employment was terminated. *See McAnulty*, 9

3   Wash. App. at 838. Even when viewed in the light most favorable to Plaintiff, the

4   Court finds that a reasonable jury could only reach the conclusion that there was no

5   violation of RCW § 49.52.050(2). Accordingly, Defendants' motion for summary

6   judgment on this claim (ECF No. 40) is **GRANTED**.

7        4. Defendant City's Vicarious Liability

8        Defendant City moves for summary judgment on Plaintiff's discrete

9   vicarious liability cause of action. Vicarious liability, otherwise known as the

10  doctrine of *respondeat superior*, imposes liability on an employer for the torts of

11  an employee who is acting on the employer's behalf. *Niece v. Elmview Group*

12  *Home*, 131 Wash.2d 39, 48 (1997). It is clear Plaintiff seeks to hold both employer

13  and employee liable where she is allowed to do so. Because there are genuine

14  issues of material fact surrounding Plaintiff's ADA and WLAD claims, a jury

15  could still impute liability to Defendant City based on Defendant Lowe's actions.

16  Accordingly, while Defendant City's motion for summary judgment on this

17  independent cause of action (ECF No. 40) is **GRANTED**, the Defendant City may

18  still be held vicariously liable for the remaining causes of action.

19  //

20  //

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 42

**II.    Motions to Exclude Expert Witnesses**

Expert witness testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court directed trial courts to perform a "gatekeeping" function to ensure that expert testimony conforms to Rule 702's admissibility requirements.  509 U.S. 579, 597 (1993). *Daubert* identifies four non-exclusive factors a court may consider in assessing the relevance and reliability of expert testimony: (1) whether a theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate and the existence and maintenance of standards controlling the theory or technique's operation; and (4) the extent to which a known technique or theory has gained general acceptance within a relevant scientific community.  *Id.* at 593-94.  These factors are not to be applied as a "definitive checklist or test," but rather as guideposts which "may or may not be pertinent in assessing reliability, depending on the nature of the issue,

the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).  The ultimate objective is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.  The district court has "broad discretion in determining the admissibility of evidence and considerable leeway in determining the reliability of particular expert testimony." *Id.*

"It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper." *Hangarter v. Provident Life & Ins. Co.*, 373 F.3d 998, at 1016 (9th Cir. 2004) (internal citation omitted).  However, "an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on the ultimate issue of law." *Id.* (citation omitted).  Expert opinion on pure issue of law is inadmissible under Rule 702.  *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).  Rather, "instructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter*, 373 F.3d at 1016 (citing *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)).

//

//

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 44

**A. Plaintiff's Motion to Exclude Defendants' Expert Judith Clark**

Defendants have proffered Ms. Clark as an expert in the field of human resources. Plaintiff moves to exclude Ms. Clark's testimony on grounds that her testimony contains inadmissible legal assertions and speculative, unreliable, and conjectural opinions. ECF No. 46.

Having reviewed the record, this Court finds that Ms. Clark is a reliable expert based on her knowledge, training, and experience in the field of human resources. ECF No. 49-5 at 2-3, 15-19. Ms. Clark has more than forty years of experience in human resources, has achieved certification in the field, and has served as an expert witness on these matters in numerous other cases. ECF No. 49-5 at 2-3, 15-19. Further, this Court finds that Ms. Clark is permitted to rely on her personal experience as well the information provided to her. Fed. R. Evid. 703; *Kumho Tire Co.*, 526 U.S. at 148. However, this Court agrees that much of Ms. Clark's anticipated testimony invades the province of the judge and jury. Ms. Clark stands to testify about whether Defendants complied with the accommodation and interactive process and whether Plaintiff was able to perform the essential functions of her position. ECF No. 49-5 at 7-11. Such testimony is improper because it offers "an opinion on an ultimate issue of law" which is the exclusive province of the jury. *Hangarter*, 373 F.3d at 1016; *Hollen v. Chu*, 2013 WL 5306594, at *5 (E.D. Wash. Sept. 19, 2013). Further, Ms. Clark's testimony

regarding the definition of legal terms, such as qualified individual, reasonable

accommodation, and interactive process (ECF No. 49-5 at 7-8), is improper

because it instructs the jury as to the applicable law, which is the exclusive

province of the court. *Hangarter*, 373 F.3d at 1016.

In order to avoid invading the province of the judge and jury, Ms. Clark

should limit her testimony to the following issues: (1) what the accommodation

and interactive process look like, including the proper role of administrators; (2)

examples of reasonable accommodations; (3) how employers typically engage in

the process of accommodating disabled employees; and (4) what steps Defendants

took in the accommodation and interactive process.  By limiting her opinion to

these issues, Ms. Clark can assist the jury in deciding the ultimate legal issues—

whether Defendant City complied with the standards set forth in the ADA—

without directly testifying to that issue.  Accordingly, Plaintiff's motion to exclude

Ms. Clark's testimony (ECF No. 46) is **DENIED, in part,** insofar as it moves to

exclude Ms. Clark from testifying, and **GRANTED, in part,** insofar as it moves to

exclude Ms. Clark's inadmissible opinion testimony.

**B. Defendants' Motion to Exclude Expert Testimony of Jennifer Morphis**

Plaintiff has proffered Ms. Morphis as an expert in vocational issues and

disability accommodations.  Defendants move to exclude the expert testimony of

Jennifer Morphis, a vocational rehabilitation counselor, on grounds that her

testimony does not meet the *Daubert* standards of reliability and relevance.  ECF No. 54 at 4.  Specifically concerning relevance, Defendants point to two opinions set forth by Ms. Morphis: that Plaintiff would be able to perform the essential tasks and functions of her job with reasonable accommodation; and that Plaintiff would be able to successfully perform her former position as an HR Analyst full time. ECF No. 76 at 6.

This Court finds that Ms. Morphis is a reliable expert based on her knowledge, training, and experience in vocational and rehabilitation issues.  Ms. Morphis has over thirty years of practical experience in the rehabilitation field. ECF No. 57 at 14 (document under seal).  This Court also finds that Ms. Morphis' opinions, based on her vocational and rehabilitation expertise, will be helpful to the jury in understanding and determining the facts at issue.  Further, this Court finds that Ms. Morphis is permitted to rely on her personal experience as well as her review of the Plaintiff's medical records.  Fed. R. Evid. 703; *Kumho Tire Co.*, 526 U.S. at 148.  However, this Court agrees that Ms. Morphis' opinions invade the province of the jury.  Ms. Morphis stands to testify that Plaintiff could adequately perform her job duties with reasonable accommodation.  ECF No. 57 at 19 (document under seal).  Such testimony is improper because it offers "an opinion on an ultimate issue of law" which is the exclusive province of the jury. *Hangarter*, 373 F.3d at 1016.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 47

1    In order to avoid invading the province of the jury, Ms. Morphis should limit

2  her testimony to the following issues: (1) which accommodations can be used and

3  are regularly used with individuals with limitations similar to Plaintiff's; and (2)

4  the extent to which these accommodations would help an individual perform the

5  essential functions of the HR Analyst position.  By limiting her testimony to these

6  issues, Ms. Morphis can assist the jury in deciding the ultimate legal issues—

7  whether Plaintiff was a qualified individual for purposes of the ADA—without

8  directly testifying to that issue.  Accordingly, Plaintiff's motion to exclude Ms.

9  Morphis' testimony (ECF No. 54) is **DENIED, in part,** insofar as it moves to

10  exclude Ms. Morphis from testifying, and **GRANTED, in part,** insofar as it moves

11  to exclude Ms. Morphis' inadmissible opinion testimony.

12  **III.    Motion to Strike Declarations**

13    Plaintiff moves to strike the declarations of Gita George-Hatcher (ECF No.

14  42), Dan Daling (ECF No. 43), and David Chandler (ECF No. 44) on the grounds

15  that all three declarations provide inadmissible opinion testimony.   ECF No. 78.

16  Specifically, Plaintiff challenges the declarations as providing "unsubstantiated and

17  conclusory" opinions regarding Plaintiff's former HR position that are not based

18  on personal knowledge; and "purported 'expert' testimony and/or inappropriate lay

19  opinion testimony" regarding whether reasonable accommodations could have

20  helped Plaintiff perform the essential functions of her job.  *Id.* at 4-5.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 48

As an initial matter, this Court finds the statements in these declarations regarding the essential functions of the HR Analyst position are based on personal knowledge, which Defendants have sufficiently established.  Under the Federal Rules of Evidence, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  Ms. George-Hatcher and Mr. Daling hold the same HR position as Plaintiff did and worked under the same supervisors as Plaintiff; thus, their statements regarding the essential functions of the HR Analyst position are undoubtedly based on their personal knowledge .  ECF Nos. 42 at 1-2; 43 at 1-2.  Similarly, Mr. Chandler, as Plaintiff's former supervisor, undoubtedly has personal knowledge of what the essential functions of the HR Analyst position are.  ECF No. 44 at 2.

This Court finds these declarations permissible for the limited purpose of helping Defendants establish effective verbal communication as an essential function of the HR Analyst position.  As the Ninth Circuit noted in *Bates*, it is the burden of the employer to produce information regarding essential functions of an employee's position.  *Bates*, 511 F.3d 974 at 991.  One way to satisfy this burden is by producing evidence of the work experience of current and former employees.  *Id.* (citing 29 C.F.R. § 1630.2(n)(3)(vi), (vii)).  The declarations of Ms. George-

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 49

Hatcher, Mr. Daling, and Mr. Chandler provide just the type of evidence contemplated in the regulations and *Bates*.  Moreover, for purposes of the instant motions, these declarations merely supplemented other evidence Defendants presented, including the HR Analyst job description and Plaintiff's testimony regarding her position, in an effort to establish that effective verbal communication is an essential function of Plaintiff's former position.

To the extent the declarations opine as to the viability of accommodations for Plaintiff's disability, the Court does not find them particularly relevant or helpful to its determination of the relevant law.  Therefore, Plaintiff's Motion (ECF No. 78) is **DENIED**.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendants' Motion for Summary Judgment (ECF No. 40) is **GRANTED in part** and **DENIED in part**.  Defendants' Motion is **GRANTED** concerning Plaintiff's state law claims for wrongful discharge in violation of public policy, intentional and negligent infliction of emotional distress, unpaid wages, and the independent vicarious liability cause of action; and Plaintiff's ADA claim regarding the Fitness for Duty Examination.  As indicated herein, Defendants' Motion is **DENIED** with respect to all other claims.

2.  Plaintiff's Partial Motion for Summary Judgment (ECF No. 58) is

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 50

**GRANTED in part** and **DENIED in part**.  Plaintiff's Motion is **GRANTED**

regarding the issues of disability and adverse employment action.  As indicated

herein, Plaintiff's Motion is **DENIED** with respect to all other issues.

  3.  Plaintiff's Motion to Exclude Defendants' Expert Judith Clark (ECF No.

46) is **DENIED in part** and **GRANTED in part.**

  4.  Defendants' Motion to Exclude Expert Testimony of Jennifer Morphis

(ECF No. 54) is **DENIED in part** and **GRANTED in part.**

  5.  Plaintiff's Motion to Strike Declarations the Declarations of Gita George-

Hatcher, Dan Daling, and David Chandler (ECF No. 78) is **DENIED**.

  The District Court Executive is hereby directed to enter this Order and

provide copies to counsel.

  **DATED** October 20, 2014.



THOMAS O. RICE
United States District Judge

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 51